(No. 2241—)

LILLIAN PELLI, ADMINISTRATRIX OF THE ESTATE OF ADOLPH PELLI, Deceased, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 11, 1934.*
*Rehearing denied April 9, 1935.*

JOHN A. FILPI, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

Adolph Pelli was committed to the Elgin State Hospital on November 6, 1931 under a diagnosis of ''Mental Derangement and Acute Alcoholism'' with a further medical finding of ''Possible beginning Paresis'' (a case of general paralysis of the insane). He died on January 10, 1932. An autopsy was held from which the essential findings were as follows:

### CAUSE OF DEATH:

Perforation of illeum with generalized peritonitis. Contributing causes were multiple fractures of ribs and emphysema; fracture of right second, sixth, seventh, eighth and ninth ribs; of left sixth, seventh, eighth, ninth and tenth ribs; fracture of the thyroid cartilage; also an opening or congestion of the bowel. The evidence of doctors, attendants and patients discloses that, although Adolph Pelli was not a violent or difficult patient, he was confined with vicious, abusive inmates who assaulted him on different occasions; that such assaults were reported to the officers of the institution, but that little or no attention was given towards preventing a repetition thereof. The record discloses that in addition to these attacks, the patient, Pelli, was misused and man-handled

by various attendants and was so bruised and battered that one attendant, Alonzo Clampton, refused to give hydrotherapy treatments to the patient until the patient's injuries were chartered and until a doctor had inspected the patient. The coroner's jury found that Adolph Pelli came to his death through injuries received by a person or persons unknown, with the recommendation that the three attendants, George Caldwell, John Ribbe and Frederick J. Taylor should be held for further questioning by the States Attorney.

The patient left surviving his wife, Lillian Pelli and one son, William Pelli, now sixteen years of age. The record discloses that the income of Adolph Pelli for several years prior to his death was from $30.00 to $55.00 per week and that prior to his committment to the Elgin State Hospital he had regularly contributed to the support of his wife and son, both of whom were left destitute and without any source of income at his death.

A report by A. L. Bowen, Acting Director of the Department of Public Welfare, dated September 11, 1933, appearing in the Brief of the Attorney General, states that "As a result of the injuries sustained by Pelli, the three employees named were held to be responsible for the injuries and were discharged with the notation, "Abuse of Patients"; that Dr. P. F. Gillette, a member of the Medical Staff of the Elgin State Hospital, had been suspended for thirty days for lack of diligence and was transferred to the Kankakee State Hospital; that Dr. Vanatta, another Staff Physician at Elgin, had also been transferred to the Alton State Hospital; further that the grand jury of Kane County had failed to indict the responsible parties because the evidence against them was solely that of patients.

The claim herein filed is for a Ten Thousand Dollar ($10,000.00) damage and the Attorney General has filed a motion to dismiss same, for the reason that—

"The Rule or Doctrine of *Respondeat Superior* has no application to a sovereign state in the exercise of a governmental function; that in operating and maintaining its penal institutions, the State is exercising such governmental functions and that the State cannot, therefore, be properly asked to respond in damages for injuries sustained by any inmate of such institution, whether due to the acts of other inmates or of attendants and employees therein."

In support of his objection the Attorney General cites the cases of —

"*Sturrock, Admrx.* vs. *State,* 7 C. C. R. 157.

*Peeka, Admrx.* vs. *State,* 6 C. C. R. 390."

and other cases, which fully sustain his contentions.

Counsel for claimant have filed their *Original Brief,* a *Reply Brief* and a further or *Second Reply Brief,* and stress the right of claimant to an award under the *"equity and good conscience"* theory.

The facts in this case would appeal to the good conscience of any court, but public policy has long established and this court is committed to the rule that "The State cannot be held to respond in damages arising out of the negligent acts of its employees or for injuries suffered by patients in its various penal and charitable institutions."

It is also true that in the care of inmates in the State Hospitals for the Insane, the State is engaged in a humanitarian duty, and the mind is shocked by a disclosure of treatment received by a patient therein, such as is disclosed by the record of this case. While it may have been impossible to obtain an indictment of the responsible parties, because certain portions of the proof would be the inadmissable evidence of inmates, yet the record is sufficient to warrant the hope that neither of the doctors or the attendants involved herein, are now retained as employees of the State in any capacity.

In an early case involving an award by the State, *"Schmidt* vs. *State,* 1 C. C. R. 78" the court, as then constituted, denied relief to an employee of the State who suffered an injury as a result of an assault made upon him by one of the convicts in a penitentiary where claimant was employed. The court there said:—

It is our understanding that the use of the language "to determine the same according to the principals of 'equity and justice'", is meant and used with a legal significance and that the Commission has no power to make an award in any case unless the facts show a legal or equitable claim against the State—; that it is not discretionary with the Commission to make an award, regardless of the question of whether the claimant had a legal claim against the State.

In the same opinion it was stated—

"This is one of those cases that appeals strongly to the sympathy (of the court) and we believe that if the facts in this case are presented to

the Legislature of this State, some relief will be granted; but at the same time we feel compelled to hold that we have no power, under the facts, to make an award in his favor and for that reason we reject the claim."

The question of allowance of claims where no legal right exists and the appeal is made wholly to the conscience of the court, is fully discussed in the case of—

"*Crabtree* vs. *State,* 7 C. C. R. 207."

In the present case the court feels it must adhere to the views therein expressed, but in denying this claim we do go without any prejudice against any other right or procedure which claimant deems advantageous to follow.

Claim denied. Case dismissed.